We'll turn now to the day calendar, and the first case is Grant v. United States. Thank you. Good morning. Good morning, your honors. My name is Louis Idalla, and I hope the court won't think me too presumptuous in my swan song of occasion, my almost 55 years of practice, when I say that... At least we know this is not your first argument. No, but unless something unusual happens, it will be my last. My position is that Mr. Grant's attorneys failed to do what is almost 101 in practice, to check the very law, the statute, for the issue at hand, and as a result of that, fulfill all the provisions necessary in Strickland. It was certainly not reasonable in practice. As a matter of fact, it was so unreasonable to fail to do what obviously substantive counsel did do, when appointed and went to the statutes and saw that Mr. Grant had an absolute right to withdraw his plea for no reason whatsoever. The reason he wished to do it is because he thought his lawyers had given him incorrect information. No, that's... He didn't give no reason. The statute makes it clear. It doesn't have to say anything. It's almost like... He doesn't have to, but didn't he tell his lawyers? No, you're talking about conversations... He's not happy with his lawyers. Why? Because the lawyers, when they met with him, instead of saying, look, you have a right to withdraw, absolute right, you don't have to give any reason whatsoever... But all the lawyers did was to ask the court to appoint independent counsel to give advice to Mr. Grant on whether he really should withdraw his plea. No, that's not what they wanted. As both of them, not one but two lawyers, both said that the reason was their failure. We have to go back to the premise here. They made a mistake. You're right. Mistake? Well, they didn't read the rule. They didn't know the rule, but what was so bad about what they did? What they suggested was that Mr. Grant should have independent counsel advise him on whether it's a good idea to, in fact, withdraw his plea. No, that's incorrect, Your Honor. What happened is they were operating under this false premise that there had to be a good reason. So meeting with them, instead of saying, if they did what they should have done, look, you have an absolute right to withdraw. Let's understand something. You go back to square one, the indictment will be there, and you will have to go to trial because you're certainly not going to plead guilty to an indictment in which the judge has to give you a life sentence. You go to trial. Instead of that happening, they were seeing whether there was any, as they put in the papers, articulable, coval, legal basis for him to withdraw it. So why? Why do you want it?  Would you not at least talk to him about whether that was a wise decision? Absolutely, and here's what happens. He makes it known on June 26th, right? Keep in mind, the letter doesn't go until July 21st. In the interim, as the lawyers put in there, they met with him, both individually and collectively, and discussed everything. But what are they discussing? They're discussing, well, we don't think, you know, the court will probably grant this. They even ordered the transcript, and you can imagine what happens. Oh, look at the transcript. Oh, it's a good plea. Instead of how they said, look, that's what you want to do, here's what happens. You're going to wind up having to go to trial. He said he wanted to go to trial. June 26th. When does the record show that he was willing to go to trial? Well, June 26th, when the mitigation expert went to meet with him, he told her, it's not necessary. I'm withdrawing my plea and going to trial. Okay? And by the way, that was the only choice. There was no choice other than that, as I just said. He can't plead guilty to an indictment that he's got in a life sentence. You go to trial. And he has that right. Whether we agree on the statute or not, that's his absolute right. And by the lawyers failing, failing to do the most basic thing, it certainly fits the first category of Strickland. And the second category, oh, is there a probability the result would have been different? There's no probability. It was an absolute certainty. The court had no choice. Let me ask you, if I might, because I understand that it was November 5th of 2013 that Mr. Grant entered his plea of guilty before the magistrate judge, Ronald Ellis. If that plea had been entered instead before the district court judge, McMahon, would there have been a problem? No, there would have been no problem. So if the district court judge had taken and accepted the guilty plea at that time, it would have been, to use the colloquial phrase as we do in Brooklyn, game over on this point. Correct. Now, let me ask you this question. If a district court judge were to enter an order that purported to be, to use the Latin phrase, nunc pro tunc, would that, in your view, now to then, would that, in your view, be without merit? So, for example, if Judge McMahon had said, well, I'm entering the order on or about August 1st of 2014, but I'm, if you will, standing in the shoes of the magistrate judge who took the plea, which I could have done as a district court judge, and some district court judges, by the way, always take their own guilty pleas to avoid this problem, would it have made a difference in your view? Very imaginative, Judge, but if that were accurate, then you would have cut the legs out of the statute. What I'm really asking is, does a district court judge, to avoid this problem, if it turns out to be a problem, have the power to enter a nunc pro tunc order? Obviously not. Otherwise, what district court judges should do to avoid this problem is to take their own guilty plea. Good lesson to be learned. I'm just asking. Right. No good. No good. And the lesson to be learned is no judge should wait over eight months. That was the time the plea was entered, and it was eight months from 2013 until July of, the middle of, the end of July of 2014. So it's a lesson to be learned. I see my time is up, but I have a few minutes left. You have time. You reserve three minutes rebuttal. Pardon me? You reserve three minutes rebuttal, so we'll hear you then. Thank you. Thank you. May I please have the floor? My name is Thomas McKay. I'm an assistant United States attorney in the Southern District of New York. I represent the United States in this appeal. Derek Grant's ineffective assistance of counsel petition fails on both prongs, and I think two of the questions that were asked during Mr. Adal's argument cut to the heart of each prong. With respect to the ineffective assistance prong, Judge Chin asked, well, perhaps they made a mistake. They didn't read the rule. What was so bad about what they did? And that is the critical question, because the standard here is not a subjective standard, what prior counsel thought as they were acting. It is an objective standard, was what they actually did reasonable under the circumstances. And as Judge Jacobs asked, at the time when Derek Grant informed his prior counsel that he believed his guilty plea was entered based on their bad advice, a potential conflict of interest arose. And so whether or not they had looked at the rule, what they in fact did, seeking the appointment of conflict-free counsel to consult with Grant on this momentous decision, one which would have given up a plea agreement which got him out from under a mandatory life sentence, was eminently reasonable. There wasn't much discussion of the prejudice prong during Mr. Adal's argument, but we should win on that prong as well, because as Judge Jacobs asked, there is nothing in the record that shows that Mr. Grant was willing to go to trial. If he was willing to withdraw, if he wished affirmatively to withdraw his plea, what would he think would happen? That he might be able to negotiate a better plea deal. Under Hill v. Lockhart from the Supreme Court and United States v. Arteca from this court, the standard here is not just whether he would have withdrawn his plea, but whether he would have withdrawn his plea and go to trial. And although his affidavit says he never wavered in wanting to withdraw his plea, this is at 54 of the appendix, he does not state that he would have gone to trial. And that's particularly important given the procedural history in which this arose. So Grant did not file any affidavit in support of his initial habeas petition. Our opposition brief, and this is at page 36 of the appendix, specifically pointed out the requirement that he file a sworn affidavit attesting that he would have withdrawn his plea and gone to trial, because that's the applicable legal standard. Now, even though Mr. Grant was represented by counsel in his habeas petition, and even though he was put on notice of this legal requirement, his affidavit that he filed in reply was deficient in two different respects. First, it did not include the assertion that he would have gone to trial. And second, it was unsworn. Both of those are independently fatal to his motion. And I'd like to talk in a little bit more detail about the Puglisi case from this circuit, which we think is on point and is cited in our brief. In that case, the defendant had filed a sworn affidavit, but it simply incorporated by reference the recitation of facts in his attorney's memorandum of law, which had the necessary assertion in that context, which is that he would have accepted the plea that had been apparently previously offered. This Court held that that adoption of his attorney's statement of facts was insufficient, because a statement regarding intent must be directly attributable to the habeas petitioner, whether it be through sworn testimony in the main proceeding or by a sworn affidavit in support of his motion. That's at 586 F. 3rd at 217. So here, just like in Puglisi, Grant was represented by competent counsel in his habeas proceedings. His failure to swear to his affidavit and to include the necessary assertion in his affidavit is therefore telling, and it's fatal to his motion. The burden is on him to establish prejudice. You make that argument in a footnote. We do, Your Honor. Well, if it's so telling and decisive and powerful, I don't know. I mean, I hadn't noticed until right now. The Puglisi case. Yes. I apologize for not putting it in the direct part of the brief, Your Honor. We think it's nevertheless necessary. We do put, I believe, in the main portion of our brief, this argument that, in fact, there is no showing of prejudice because he did not show that he went to trial. Do you dispute the view that until the district court judge accepted the plea that was presented to the magistrate judge that the defendant had an absolute right to withdraw his plea under the rule? Do you dispute that? We do not dispute that. Well, in that case, isn't the defendant right that he had a right to withdraw his plea? And obviously, if he withdrew the plea, it's up to the government to decide whether to go forward and negotiate a new plea or take him to trial or seek to dismiss the indictment. But he said, look, for whatever reason, good, bad, or indifferent, I now want to withdraw the plea. It had not yet been accepted by the district court judge over the eight-month period, but it could have been an eight-day period. Point is, if the district judge had taken the plea, you've heard the defendant's counsel say, game over. Eight months go by. In that period, the defendant says, I want to withdraw my plea. Isn't he entitled to do it until it's accepted by the district court? Isn't that really what this court is now faced with determining? No, Your Honor. That's what this court was faced with determining on direct appeal. I stood in front of this court three years ago and argued that point on direct appeal. And what this court decided at that time, and the summary order begins at page 65 of the appendix, is that what defense counsel's letter to Judge McMahon was, was not the equivalent of Curcio counsel request. Correct. It was a request for the appointment of conflict-free counsel. It was not a request to withdraw the plea. It was independent counsel to consult on whether or not Mr. Grant should be able or should in fact choose to withdraw his plea. You're saying you can't read that letter as a request to withdraw the plea. That's correct, Your Honor. I am saying that, and I believe this court has said that in its opinion, which is in the appendix at page 65. Well, which way does that cut? I mean, the client says, I want to withdraw the plea, and the lawyer not only doesn't make a motion to withdraw, but sends a letter just saying, why don't we get another lawyer in here to advise him, because he doesn't listen to me. Because that goes back to the point that I tried to make at the beginning in response to Judge Chin's question, which is that perhaps it would have been better for defense counsel to act any number of different ways. But the question is not, with the benefit of hindsight, how defense counsel could best have acted. It's whether what they did was within the wide range of reasonable professional assistance. And what they did, as this court has held— Well, why is it hindsight that if the motion had been made to withdraw the plea, it would naturally have been granted? Indeed, all you had to do was send a letter saying, plea withdrawn. When I say hindsight, what I'm referring to is the standard under Strickland for ineffective assistance of counsel. And the question is, when defense counsel were put in this tricky situation, we have a client who says that the very favorable plea which he had entered was based on our bad advice. That put them in a bind. There's a potential ineffective claim there. I think the problem, though, is that the advice should have been, you have an absolute right to withdraw your plea. We think it's a bad idea, but that should have been the advice. And he might have said, I want to withdraw my plea. The problem is that at that point in time, what defense counsel would be doing is, in the face of a potential conflict of interest, giving the defendant advice on a critical issue like this. Many defense counsel in that situation would think it incumbent upon themselves to try to talk their client out of making such a decision. But what defense counsel did here instead was, rather than further advising someone in a situation where there's a potential conflict of interest, make a very simple request of the court. Please give him a conflict-free counsel to advise him on this very important decision. And I should say that although for the… Given the way it played out, he lost his right to withdraw the plea for no reason. Is that not prejudice? Well, again, the standard for prejudice is both that he would have withdrawn his plea and that he would have gone to trial. The burden is on him to prove that. He's failed to do so. He's failed to file a sworn affidavit. But I don't know that there's a case like this one, but isn't there prejudice in losing his absolute right to withdraw his plea for any reason, for no reason? Not if he hasn't met his burden of establishing that he would have, in fact, exercised that right and would have, in fact, gone to trial. That is the standard set forth in Hill v. Lockhart, United States v. Arteca. The requirement that he support his assertions on this with sworn testimony is set forth in United States v. Puglisi. So in this situation, as in any other, there might be ways where the court could think of a way in which defense counsel would have acted more prudently than they did. But under the difficult circumstances in which they're in, we think making the request to get Mr. Grant a second conflict-free opinion was entirely reasonable. Of course, he could have done both. He could have done both, advised him of his right to withdraw and asked for conflict-free. I don't think it's a good idea, as Judge Chin just suggested he might. But you have an absolute right to withdraw your plea. Withdraw your plea. And by the way, Your Honor, I think it would be good to appoint the equivalent of curtsy of counsel. What's wrong with doing that? Because I think there's two things wrong with that. First of all, that first point, advising him further on the law and on what he should do, is problematic where there's a potential conflict of interest. This Court's case law says. Not on what he should do, but simply on the fact that he had an absolute right. Still, giving a defendant advice about the law and about his legal options under a potential conflict of interest is in tension with this Court's presence that say under the circumstances, defense counsel should seek the appointment of conflict-free counsel. If I should have been, you have an absolute right to withdraw your plea. We think you ought to get independent counsel to consult with. Well, I think the point is the same. I'd also go so far as to say it is not. Now, we lost this argument on direct appeal. I'm not trying to relitigate direct appeal. But there's at least some uncertainty. There's a circuit split over whether or not someone can withdraw their plea after a magistrate has accepted it. There was no precedent in this circuit. Now, we lost it on direct appeal. I'm not relitigating that issue. That probably was. I agree, Your Honor. But the point is simply that defense counsel at that time, it wasn't such a simple answer to just say now you have an absolute right to withdraw your plea. In fact, it didn't occur to these two extremely experienced members of the CJA panel. There's a circuit split on the issue. So it's not quite as cut and dry as it is now with the benefit of hindsight, with the benefit of a Second Circuit decision saying that he did at that time have the absolute right to withdraw his plea. Seeing no further questions, we'll ask that you affirm the district court's order. Thank you. We'll hear rebuttal. First of all, if you look at both affirmations, the two attorneys, both of them say in there he wanted to go to trial. So it's in there. That's number one. Number two, the government fails to just look at the language in the statute which says clearly that you withdraw it for a reason or no reason whatsoever. Third, there was no conflict. There was no conflict. The conflict that the attorneys were talking about was because they were operating under the wrong premise that there had to be a good, articulable, culpable reason to withdraw, which was mistaken. And say the defendant said A, and they say, oh, gosh, naturally there's going to have to be a hearing, and maybe we might be called a witness, and we maybe say something different. There was no conflict. They made it. A person is entitled to conflict-free advice even as to something that that person can do at will. But there was no conflict because there was no reason to have a hearing. It had to be granted. The judge had no choice in the matter. The judge had to grant it if it was put forth prior to the acceptance. And keep in mind here something. The decision to withdraw the plea is one that your client made without advice of counsel. He could do anything. He's able. I mean, whether we agree with the statute or not, he or she could do anything to withdraw it. I know, but usually when it comes to a plea, people are entitled to have advice of counsel. But there was no conflict. The conflict that the attorney is referring to is there would be a hearing. But there didn't have to be a hearing because there's no necessity for a hearing if they were dealing with what they should have done, found the statute, and no reason were given. That's it. They met many times with the defendant, discussed it. They say their affirmations. He was adamant. He's never, ever changed his mind, even after substitute counsel. He always wanted to withdraw. And, you know, in hindsight, at least someone my age, I mean, 40 years of going to trial, what was the big plea bargain? I mean, the judge had to give him at least 30, and, of course, he wound up with 40 years to life. Now, I realize if you're going to be 80 in a few weeks, you know, what's the big deal? But he's no young guy. In other words, he's not a teenager in his early 20s. So it's understandable why, after thought, he may say, look, let me go to trial. That's all. It's my right. I can do it. And that's what should have been done. I understand the frustration with the lower court. It expressed it on the record, gone through trial with another one, hung jury, went to trial again, convicted, was reversed. The frustration. We're all human beings. Well, let me tell you in conclusion, it was a pleasure to speak today before you gentlemen. It was a pleasure to hear you. I think my son Arthur and his colleagues will still try to pick my brains, whatever may be left worth picking. Take care. Have a good day. Thank you both. We'll miss you. We will reserve decision.